IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No. 06-cv-00451-WYD-CBS

MARY J. TURTON,

      Plaintiff,

v.

DIRK KEMPTHORNE, SECRETARY, UNITED STATES DEPARTMENT OF THE
INTERIOR,

      Defendant.
_____

**ORDER**
_____

I.     INTRODUCTION

     THIS MATTER is before the Court on several motions for summary judgment.

Specifically, Defendant filed a Motion for Summary Judgment on February 14, 2007,

seeking judgment on Plaintiff's employment claims.  The parties filed cross motions for

summary judgment on the unjust enrichment counterclaim.  For the reasons stated

below, Defendant's Motion for Summary Judgment is granted in part and denied in part.

Plaintiff's Motion for Summary Judgment on Defendant's Counterclaim is denied and

Defendant's Cross-Motion for Summary Motion on the counterclaim is denied.

II.    FACTUAL BACKGROUND

     From 1995 to 1999, Plaintiff was employed as an accountant with the Minerals

Management Services ["MMS"] of the Department of the Interior ["DOI"].  Plaintiff's

claims arise out of alleged sexual harassment by her immediate supervisor Charles

Sims during the period 1995 to 1998.  In December 1997, Plaintiff reported this

harassment to Don Gilman, the Branch Chief, which is the first time that MMS

management became aware of her allegations.  On or about January 13, 1998,

Mr. Sims was removed as Turton's supervisor, although there is some dispute about

the reason for this removal.  Mr. Sims' office was physically re-located approximately

50 feet from Plaintiff's cubicle.  After Mr. Sims' supervisory duties were removed, Don

Gilman considered Turton's complaints to have been addressed and remedied.

In January 1998, Plaintiff contacted an EEO counselor but did not file a

complaint at that time.  Plaintiff asserts that the EEO counselor did not provide her any

information about her rights or explain the EEO administrative process.  Plaintiff admits,

however, that she knew she could have filed an EEO complaint at that time.

On July 22, 1998, Plaintiff had a meeting with Associate Director Lucy

Quierques Denett, at which time she claimed she was fearful of Mr. Sims.  Although

Defendant asserts that Plaintiff did not raise allegations of sexual harassment at that

meeting, Plaintiff has presented evidence that she made several complaints about Mr.

Sims which were of a harassing nature.  On July 28, 1998, Plaintiff learned that Mr.

Sims was upset about being removed from his supervisory position.

On August 26, 1998, Plaintiff met with an EEO counselor to complain of age and

sex discrimination and reprisal involving her fear that Mr. Sims was angry.  The earliest

allegation in the complaint was January 28, 1998 per the 45 day rule for contacting an

EEO counselor related to discriminatory conduct, but the complaint asserts that the

incidents result from long-standing problems with Mr. Sims.  Ex. A13 to Def.'s Mot. for

Summary J. and Br. in Support Thereof.

On August 26, 1998, Plaintiff met with management officials to discuss her

concerns about Mr. Sims.  Until that date, Don Gilman was not aware of any further

complaint by Plaintiff beyond those made in December 1997.  Management of MMS

hired an outside investigator, who concluded that there was no evidence the comments

of Mr. Sims were sexual or threatening.  Management also hired a consultant to

conduct a workplace violence assessment.  The consultant made no conclusive

findings that Mr. Sims posed a direct threat to Plaintiff but recommended that Mr. Sims

and Plaintiff be separated.  MMS offered to transfer Plaintiff to a comparable position in

New Orleans, which was not immediately taken by Plaintiff.[1]

Plaintiff complains that in May 1998, Mr. Sims started "stalking" her and another

worker, Patricia Kann, staring at them and leering at them, and that this continued until

the end of the year.[2]  Plaintiff reported Mr. Sims' behavior to her supervisor

approximately eight times during the period August 1998 through December 1998 and

informed him that she perceived Mr. Sims' conduct as threatening.  In September 1998,

Plaintiff asked for help from the Federal Protective Service in regard to Mr. Sims.

---

[1]  Plaintiff claims that she had health concerns and other logistical concerns such as selling her house which impacted her ability to transfer sooner.

[2]  While Defendant denies that Plaintiff used the word "stalking" to describe Mr. Sims' behavior, she testified to "stalking behavior" of Sims in her affidavit.  She testified in that regard that Mr. Sims confronted her in the hallways multiple times in the day, for no legitimate purpose, and that he would give her hostile stares.  Ex. 8 to Pl.'s Mem. Br. in Supp. of Def.'s Mot. for Summ. J.  As I must view the evidence in the light most favorable to Plaintiff in connection with Defendant's motion, I will consider evidence that Plaintiff believed Mr. Sims was stalking her.

In late December 1998, it was decided that Plaintiff should be relocated to a location about a mile and a half from the building where she was then employed. Plaintiff had no contact with Mr. Sims at the new location.  In January 1999, MMS management issued a directive to Plaintiff and Mr. Sims to have no contact with each other.  On February 12, 1998, Plaintiff filed a formal EEO complaint.  In April 1999, Plaintiff transferred to New Orleans.

Plaintiff's complaints of sexual harassment and reprisal filed in February 1998 and October 1999 were heard by an EEOC Administrative Judge, who consolidated Plaintiff's complaints with co-complainant, Patricia Kann.  The co-complainants were represented by the same attorney.  On December 2, 2004, a decision was issued in Plaintiff's case, and on December 4, 2004, a decision was issued in Ms. Kann's case. The judge awarded compensatory damages of $380,000 for Plaintiff and $365,000 for Ms. Kann, but reduced the awards to $300,000 for each claimant.  As to attorneys fees, the judge stated as to Plaintiff:

> [Plaintiff's] representative submitted a proper and timely verified statement of fees and costs with an accompanying affidavit itemizing the charges for legal services. 29 C.F.R. § 1614.501(e)(2)(I). The amounts claimed are attributable to the services rendered and costs incurred with respect to the consolidated discrimination complaints of [Plaintiff] and her co-Complainant, Patricia Kann. [Footnote omitted]. [Plaintiff] succeeded in meeting her burdens of proof in this matter, in part, because of the corroborative effect of evidence presented in support of Kann's complaint. Thus, fees and costs incurred in support of Kann's discrimination claims constituted a reasonable expenditure of time in the effort to prove [Plaintiff's] case. The total amount of attorneys fees and costs to which [Plaintiff] is entitled,  then, is the total amount claimed for the presentation of both [Plaintiff's] and Kann's cases, less any attorney fees and costs paid with respect to Kann's case.

Exh. 2, p. 25, to Pl.'s Mot. for Summ. J.

Defendant did not appeal liability but appealed the damages decision.  The Equal Employment and Opportunity Commission's Office of Federal Operations ["the OFO"] reduced Plaintiff's compensatory damage award to $110,000.00 and Ms. Kann's award to $100,000.00.  The OFO did not, however, alter the original joint award of attorney fees and costs totaling $102,903.06.  The OFO also ordered Defendant to credit Plaintiff with 50 hours of annual leave and 150 hours of sick leave.  Plaintiff and Ms. Kann requested reconsideration as to the reduction in their compensatory awards, which was denied on December 16, 2006.  A final judgment was issued on that date.  On or about December 15, 2005, Defendant paid the co-complainants' attorney for fees and costs in the sum of $102,893.06.

Plaintiff filed this case on March 13, 2006, seeking de novo review.  The Amended Complaint asserts claims of sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964.  On March 30, 2006, Plaintiff returned the award of compensatory damages to Defendant.  She did not return any portion of the $102,903.06 awarded for attorney fees and costs or the 300 hours credited to Plaintiff for annual and sick leave.  Defendant filed a counterclaim, arguing that Plaintiff should have returned these amounts and/or benefits, and that the retention of same constitutes unjust enrichment.

III.    ANALYSIS

A.    Standard of Review

Summary judgment may be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  In reviewing a summary judgment motion, the court must view the evidence in the light most favorable to the nonmoving party.  *Anaya v. Crossroads Managed Care Sys., Inc.*, 195 F.3d 584, 590 (10th Cir. 1999).  All doubts must be resolved in favor of the existence of triable issues of fact. *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

When the parties file cross motions for summary judgment, the court is "'entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts.'"  *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (quotation omitted).  Cross motions for summary judgment must be treated separately—the denial of one does not require the grant of another.  *Buell Cabinet Co., Inc. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979).

      B.    <u>Analysis of the Motions for Summary Judgment</u>

            1.    <u>Defendant's Motion for Summary Judgment</u>

Defendant's Motion for Summary Judgment makes the following arguments: (1) Plaintiff failed to exhaust her administrative remedies for misconduct arising before July 17, 1998; (2) during the period for which she exhausted her administrative remedies, Plaintiff is unable to show that she was subjected to a hostile work environment; (3) Plaintiff's hostile work environment claim is barred because she failed timely to report the alleged harassment, and, when she did, Defendant took prompt, remedial measures that halted any inappropriate conduct; and (4) Plaintiff's retaliation claim fails

because she did not establish adverse employment action, a causal connection or pretext. I address these arguments below.

a.   Whether Plaintiff Failed to Exhaust Her Administrative Remedies for Conduct That Occurred More than 45 Days Before Her EEO Contact

Defendant alleges that Plaintiff is unable to establish that she exhausted her administrative remedies for claims arising prior to June 17, 1998, because she failed to contact an EEO counselor within 45 days of those actions. It is argued that while Plaintiff contacted an EEO counselor in January 1998, she did not complete the requisite process. Instead, Plaintiff did not initiate an EEO action until August 26, 1998. Thus, it is argued that the operative time period for Plaintiff's actionable claims begins after July 17, 1998, and effectively ends January 6, 1999, when Plaintiff was moved to an office where she had no contact with her supervisor.

In response, Plaintiff first correctly notes that the 45 day period actually goes back to July 12, 1998. Plaintiff also correctly notes that as this case involves alleged continuing violations, it is governed by the Supreme Court's decision in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). As to the merits, Plaintiff argues that the EEOC found that Plaintiff had exhausted her remedies on all aspects of the claim going back to 1995. More specifically, the EEOC found that Plaintiff established a continuing violation beginning with incidents occurring as early as November 1995, and that she had established at least four acts which fell within the 45 day period.[3]

---

[3]   Plaintiff also asserts that the EEO counselor did not tell her about the 45 day limitation. Since the counselor failed to provide proper notice of that period, Plaintiff argues that the period may be extended.

Turning to my analysis, the first step in the administrative process requires that an aggrieved employee contact an EEO counselor within 45 days after the alleged discriminatory act. 29 C.F.R. § 1614.105(a)(1). The failure to do so bars the employee from pursuing a claim relating to such discriminatory act in federal court. *Davis v. United States Postal Serv.*, 142 F.3d 1334, 1340 (10th Cir. 1998). The time limit begins to run when the employee becomes aware of the adverse employment action. *See Beene v. Delaney*, No. 02-6020, 2003 WL 21480698, at *3 (10th Cir. 2003). Here, however, Plaintiff alleges sexual harassment through a hostile work environment. Thus, as Plaintiff recognizes, this case is governed by the *Morgan* case.

In *Morgan*, the Supreme Court held that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." 536 U.S. at 113. However, the Court distinguished hostile work environment claims, holding that "[i]n order for the charge to be timely, the employee need only file a charge [within the relevant time period] of any act that is part of the hostile work environment." *Id.* at 118. This is because such claims "are different in kind from discrete acts" because "[t]heir very nature involves repeated conduct." *Id.* at 115. The Court concluded, "[p]rovided that *an act contributing to the claim* occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* at 117 (emphasis added).[4]

---

[4] While *Morgan* dealt with the 180-300 day filing rule for non-federal employees, the forty-five day requirement for federal employees is treated in much the same way. *See Jensen v. Henderson*, 315 F.3d 854, 859 n. 9 (8th Cir. 2002).

I thus must determine whether any acts that support a hostile work environment based on sex occurred within 45 days of the EEOC complaint.  I find that Plaintiff has alleged certain acts in support of her hostile work environment claim that occurred within 45 days of the EEOC complaint in August 1998.  Although Defendant argues that Plaintiff cites only to an unsworn letter from her attorney detailing Plaintiff's allegations, I find that Plaintiff has presented other admissible evidence that justifies an inference that Plaintiff's supervisor Mr. Sims committed acts within the 45 day period prior to the EEOC contact and complaint.  Specifically, there is evidence that Mr. Sims stared at Plaintiff in a hostile way, leered at her and/or stalked her within that period.  *See* Exs. 1, 8, 13 to Pl.'s Mot. for Summ. J.; Ex. A13 to Def.'s Mot. for Summ. J.

Based on this evidence, I find that Plaintiff exhausted her remedies as to alleged acts that occurred within the 45 day period and that the entire time period of the hostile environment may be considered.  Accordingly, I reject Defendant's argument that Plaintiff failed to exhaust administrative remedies for misconduct arising before July 12, 1998.  I also reject Defendant's argument that I must consider only those acts that occurred within the 45 day period in determining whether Plaintiff experienced a hostile work environment.

> b.   Whether During the Period After July 12, 1998, Plaintiff Can Show That She Was Subjected to a Hostile Work Environment

Defendant also argues that the acts which Plaintiff relies on that occurred within the 45 day period were not based on sex, and therefore do not support Plaintiff's sexual harassment/hostile work environment claim. As stated earlier, the acts include allegedly

"stalking" type behavior where Mr. Sims would confront Plaintiff in hallways and the parking lot, stare at her in a hostile way or leer at her. Plaintiff also asserts that on at least one occasion, Mr. Sims purposely brushed against her. These acts occurred after Mr. Sims was removed from a supervisory position over Plaintiff and after Plaintiff learned that he was angry as a result of this.

I reject Defendant's argument that these acts do not support Plaintiff's sexual harassment claim. "Hostile work environment harassment arises when the alleged discriminatory conduct 'has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1413 (10th Cir. 1987). "A court must look to the totality of the circumstances to determine whether the alleged conduct is sufficiently pervasive to create a hostile environment. *See Harris v. Forklift Sys., Inc.*, 510 U..S. 17, 23 (1993). The factors that may be considered include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.*

Harassment is not automatically sex discrimination merely because the words used have sexual connotations or content -- the critical issue is "'whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.'" *Oncale v. Sundowner Offshore Servs, Inc.*, 523 U.S. 75, 80 (1998) (quoting *Harris*, 510 U.S. at 25). "[H]arassing conduct need not be motivated by sexual desire to support an inference of discrimination on the

-10-

basis of sex." *Id.* A plaintiff can support her claim by showing "sex-specific and derogatory terms . . . as to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace." *Id.*

The sexual harassment in this case must be viewed in its totality. Plaintiff asserts that Mr. Sims made sex-specific and derogatory terms over a long period of time before he was removed as her supervisor which appear to be tied to her gender, including referring to women as "bitches" or "dumb bitches". Pl.'s Mem. Br. in Opp. to Def.'s Mot. for Summ. J., at 7 ¶ 4. Accordingly, I find that Plaintiff has presented a genuine issue of material fact as to whether a sexually hostile work environment was created prior to the 45 day period before the August EEO complaint. *See E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 798-99 (10th Cir. 2007) (characterizing the term "bitch" as a "'sexual epithet[ ]' that courts have described as 'intensely degrading'" and holding that its use in the workplace was sufficient to have a jury decide whether the comments were made because of gender animus). Defendant has not disputed this.[5]

After Mr. Sims was removed as Plaintiff's supervisor and re-located to a position further away from Plaintiff, he began what Plaintiff characterizes as stalking type behavior, staring at her in a threatening way and/or brushing up against her. As discussed above, at least some of this conduct is alleged to have occurred within 45 days of the EEO complaint. While Defendant argues that the acts occurred as a result

---

[5] Defendant argues only that Plaintiff did not establish a sufficiently abusive work environment during the time period commencing 45 days prior to her EEO contact. To the extent this argument assumes that the Court is unable to consider the entirety of the alleged sexual harassment, dating back to 1995, I reject this argument.

of Mr. Sims' anger over being removed as Plaintiff's supervisor, and not due to

Plaintiff's gender, I believe there is a logical inference that the two are intertwined.

Plaintiff has presented evidence which supports an inference that Mr. Sims was

removed as her supervisor due to the hostile work environment that he created.  The

anger he felt and acts he took against Plaintiff after his removal would not have

occurred but for that, and thus could be deemed to be tied to Plaintiff's gender.

Further, I find that a reasonable person in Plaintiff's position could feel that

Mr. Sims' acts of repeatedly confronting Plaintiff at work, staring at her, leering at her,

or brushing up against her were based on her gender, and that they could be deemed

as threatening or humiliating.  Indeed, there is evidence that she was so frightened of

this conduct that she asked for help from Federal Protective Services.  Plaintiff has also

presented evidence that this conduct interfered with her work performance, and that

she reported it to management.  Under the totality of the circumstances, I am unable to

say as a matter of law that the acts which occurred within 45 days of the EEO complaint

were not made because of gender animus.  This is an issue for the jury.

Based on the foregoing, I find that Plaintiff has presented sufficient evidence of

sexual harassment, and reject Defendant's argument to the contrary.

c.   Whether Plaintiff's Hostile Work Environment is Barred
Because She Failed to Timely Report the Alleged
Misconduct, and When She Did, Whether the Agency Took
Prompt Remedial Efforts

Defendant argues that liability may not be imposed after January 1998 because

Plaintiff failed to put management on notice that she felt threatened by Mr. Sims after

-12-

he was removed as her supervisor in January 1998.  Indeed, Plaintiff did not notify Defendant of additional concerns until July 1998.  Further, it is argued that on the facts presented by Plaintiff, MMS did not have actual notice of Mr. Sims's threatening behavior between January 1998 and the time that Plaintiff complained in July 1998.

Defendant also argues that as to conduct occurring prior to January 1998, liability not be imposed either because, even though Mr. Sims was a  supervisor at the time:  (1) Plaintiff was not subject to a tangible employment action, and (2) Plaintiff unreasonably failed to take advantage of preventive or corrective opportunities and, when she did, prompt remedial measures were taken.  Plaintiff's delay until December 1997 is alleged to be unreasonable, particularly as Defendant claims Plaintiff was aware of her department's sexual harassment policy as early as 1996 when she received sexual harassment training.

I first address Defendant's potential liability before January 1998.  At that time, Mr. Sims was still Plaintiff's supervisor.  The Supreme Court has recognized that an employer "is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee."  *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 765 (1998).  It further held that "[w]hen no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence" of two elements:  "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff

-13-

employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.*

As to the first element, the Supreme Court noted that proof that an employer had a stated antiharassment policy with complaint procedure suitable to the employment circumstances would be relevant. *Faragher*, 524 U.S. at 807.  It further noted that a demonstration that the employee failed to use a complaint procedure provided by the employer "normally suffice[s] to satisfy the employer's burden under the second element of the defense." *Id.* at 807-08.

In this case, I find that summary judgment should be denied as to Defendant's vicarious liability prior to January 1998.  I find that there are genuine issues of material fact as to both elements of the affirmative defense.  Specifically, I find that there are issues of material fact as to whether Defendant had a stated antiharassment policy with a complaint procedure suitable to the employment circumstances.  There is evidence that Defendant may not have had a policy with a formal complaint procedure.  Second, I find that there are genuine issues of material fact as to whether Plaintiff was aware of such policy and/or unreasonably failed to take advantage of any preventive or corrective opportunities provided by Defendant.  Finally, I find that there are genuine issues of material fact as to whether Defendant exercised reasonable care to prevent and correct promptly any sexually harassing behavior of Mr. Sims.  Indeed, as the harassment is alleged to have continued after Mr. Sims was removed as Plaintiff's supervisor, it is reasonable to assume that a jury could conclude that Defendant did not promptly correct any sexually harassing behavior.

As to conduct that occurred in and after January 1998 when Mr. Sims was removed as Plaintiff's supervisor, the first issue is what standard of liability applies to Defendant as the employer.  While Plaintiff argues that the same standard should apply (*i.e.,* vicarious liability under the *Faragher/Ellerth* test), I disagree.  At that time it is undisputed that Mr. Sims was no longer Plaintiff's supervisor, having been removed of his supervisory duties over Plaintiff.  Accordingly, I find that the harassment by Mr. Sims constituted co-worker harassment at that time, which means that Defendant can be liable only for negligence.  *Ford v. West*, 222 F.3d 767, 776-77 (10th Cir. 2000). Plaintiff must thus establish that Defendant "'had actual or constructive knowledge of the hostile work environment but did not adequately respond to notice of the harassment.'"  *Id.* (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 644, 673 (10th Cir. 1998) (internal quotations omitted).[6]

In the case at hand, I find that Defendant's summary judgment motion should be granted as to conduct that occurred between January 1998 and July 1998.  Plaintiff has not shown that Defendant knew or should have known of harassment during that time period.  Indeed, it is undisputed that Plaintiff did not complain of the harassment during that period.  Further, Plaintiff has not shown that the harassment was so pervasive as to support an inference of employer knowledge.

---

[6] According to the Tenth Circuit, "[a] plaintiff demonstrates actual employer knowledge where the plaintiff has reported harassment to management-level employees."  *Id.*  "An employer may be deemed to have constructive knowledge of racial harassment where the pervasiveness of the harassment supports an inference of employer knowledge."  *Id.*  "Only when the acts of harassment are 'so egregious, numerous, and concentrated as to add up to a campaign of harassment' will the employer be liable for failure to discover the harassment."  *Id.* (quotation and internal quotation marks omitted).

As to conduct that occurred after July 1998 when Plaintiff complained of Mr. Sims' conduct, however, I deny Defendant's motion.  Summary judgment is not proper because I find that reasonable minds could differ as to whether Defendant took adequate steps to stop the harassment.  It is undisputed that Plaintiff and her co-worker reported conduct of Mr. Sims that they found to be threatening during the time period from August 1998 through December 1998.  Further, Plaintiff asserts that she was so threatened by Mr. Sims' behavior that she asked for help from the Federal Protective Service during this period.  While management conducted an investigation which results were not favorable to Plaintiff, management did not offer to move Plaintiff to a comparable position or relocate her until December 1998 despite numerous complaints. Under these circumstances, I cannot say that no rational jury could find that the investigation was inadequate and unreasonable.

        d.      <u>Whether Summary Judgment is Proper on the Retaliation Claim</u>

Finally, Defendant argues that summary judgment should be granted on the retaliation claim.  "Title VII's anti-retaliation provision forbids employer actions that 'discriminate against' an employee (or job applicant) because [s]he has 'opposed'" a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'" *Burlington Northern and Santa Fe Ry. Co. v. White*, ___ U.S. ___, 126 S. Ct. 2405, 2410 (2006).  The Supreme Court clarified in *White* that the anti-retaliation provision of Title VII "is not limited to discriminatory actions that affect the terms and conditions of employment." *Id.* at 2412-

-16-

13. Instead, it protects an individual "from retaliation that produces an injury or harm."

*Id.* at 2414. "The standard is tied to the challenged retaliatory act, not the underlying

conduct that form[ed] the basis of the Title VII [discrimination] complaint." *Id.* at 2416.

In order to establish a prima facie case of retaliation after *White*, "a plaintiff must

demonstrate (1) that [s]he engaged in protected opposition to discrimination, (2) that a

reasonable employee would have found the challenged action materially adverse, and

(3) that a causal connection existed between the protected activity and the materially

adverse action." *Jencks v. Modern Woodmen of America*, 479 F.3d 1261, 1265 n.3

(10th Cir. 2007). "'In the summary judgment context, a plaintiff initially must raise a

genuine issue of material fact on each element of the prima facie case.'" *Id.* at 1265

(quotation omitted).

Defendant does not dispute that the first element has been satisfied. I find that

this element is satisfied since Plaintiff filed an EEO complaint. Defendant argues only

that Plaintiff cannot satisfy either the second or third elements. The Supreme Court

held that the second element can be proved by showing that the employer's action[s]

"'might well might have dissuaded a reasonable worker from making or supporting a

charge of discrimination.'" *White*, 126 S. Ct. at 2415 (quotations omitted); *see also*

*Williams v. W.D. Sports*, ___ F.3d ___, 2007 WL 2254940, at *5 (10th Cir. 2007).

I find that there is evidence from which a jury could conclude that a reasonable

person in Plaintiff's shoes might have been dissuaded from making or supporting a

charge of discrimination based on Defendant's conduct. Specifically, Plaintiff asserts

that she was told her supervisor would be moved as a result of his conduct. Instead,

-17-

Plaintiff and her co-worker Ms. Kann were moved away from their team into a separate building and then put on different floors.  Plaintiff asserts that this move made working conditions more difficult because she was told not to say why she was there, she was alone and her files were at the federal center.  Further, Plaintiff was issued a directive setting orders as to her conduct, which instructed her not to contact Mr. Sims and not come to Building 85 without prior clearance.  The letter could be read as sanctioning Plaintiff instead of Mr. Sims for the conduct complained of by Plaintiff.  This letter was also contrary to the workplace violence assessment which recommended that *Mr. Sims*, not Plaintiff, receive this type of written warning.   Thus, I find that Plaintiff has presented genuine issues of material fact as to the second element.

As to the third element, a causal connection "'may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct followed by adverse action.'"  *Conner v. Shnuck Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997) (quoting *Burrus v. United Tel. Co. of Kan., Inc.*, 683 F.2d 339, 343 (10th Cir. 1983)).  It is true that Plaintiff's EEO activity occurred months before many of the actions that she complains of.  However, Plaintiff continued to complain to her supervisors about Mr. Sims' conduct after the EEO activity, which informal complaints constitute protected activity.  Some of these complaints occurred very close in time to the protected conduct and satisfy the causal connection standard.[7]

---

[7]   While Defendant argues that the complaints were not directed at sexual harassment but instead to non-gender related problems, I previously rejected this argument.  *See* Section III.B.1.b, *supra*.

Once the plaintiff establishes a prima facie case of retaliation, the burden shifts to the employer to offer a legitimate reason for the adverse actions at issue.   *Conner*, 121 F.3d at 1394.  In this case, Defendant claims that it took the challenged actions at issue to protect Plaintiff from her complaints of sexual harassment.  Since Defendant has offered a legitimate nonretaliatory reason, "'the burden then shifts back to Plaintiff to show that 'there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual.'" *Id.* (quotation omitted).

In the case at hand, I find that Plaintiff has demonstrated genuine issues of material fact as to pretext.  She presented evidence that instead of moving Mr. Sims as promised by the employer, Plaintiff was separated from her team and files, moved to another building, and told not to say why she was there.  This is alleged to have made working conditions very difficult for her.  Further, Plaintiff presented evidence in the form of a memorandum from her supervisor that could be read as sanctioning Plaintiff instead of Mr. Sims for the conduct complained of by Plaintiff.  This is despite the fact that the workplace violence assessment report recommended that this type of written memorandum be given to Mr. Sims, not Plaintiff.

In conclusion on the retaliation claim, I find that Plaintiff has presented genuine issues of material fact on each element of the prima facie case as well as pretext.  Accordingly, I deny Defendant's Motion for Summary Judgment on this claim.

B.   Cross Motions for Summary Judgment on Unjust Enrichment

Defendant's Counterclaim for unjust enrichment asserts that the DOI is entitled to all monies and benefits awarded to Plaintiff in connection with her previous EEO

administrative action.   Defendant asserts that Plaintiff's failure to return the monies and

benefits previously awarded to her constitutes unjust enrichment as the circumstances

will avail Plaintiff of an opportunity for double recovery.

Plaintiff has moved for summary judgment on this claim, asserting as a matter of

law that Defendant has not met the requirements for proving unjust enrichment.

Defendant filed a cross-motion for summary judgment, arguing that the undisputed

material facts not only preclude entry of summary judgment for Plaintiff, but also

demonstrate that judgment should enter in favor of Defendant on this claim.

Plaintiff moved to strike Defendant's cross-motion in her reply brief, arguing that

the cross-motion was not properly filed.   I acknowledge that the cross-motion

represents both a second motion for summary judgment that Defendant did not seek

leave to file (*see* Practice Standards, Section III.B.1), and that the local rules prohibit

incorporation of a cross-motion into a response brief.   Thus, there are procedural

grounds that would justify striking the motion.   However, I will consider Defendant's

cross-motion in the interests of judicial economy.   The motion to strike is thus denied.

Turning to the merits of the cross-motions, under Colorado law an unjust

enrichment claim requires that Defendant prove: (1) Plaintiff was unjustly enriched at

Defendant's expense; (2) Plaintiff received a benefit; and (3) Plaintiff received a benefit

under circumstances that would make it unjust for Plaintiff to retain the benefit without

paying.  *Salzman v. Bachrach*, 996 P.2d 1263, 1266 (Colo. 2000).   I find that there are

genuine issues of material fact that preclude summary judgment to both parties on the

unjust enrichment counterclaim

Specifically, I find that the following facts are disputed: (1) whether the award of attorney fees was a single award representing fees incurred as to both Plaintiff's case and Ms. Kann's case or separate awards; (2) whether attorney Sweeney represented Plaintiff and Ms. Kann on a contingency fee basis; (3) whether and to what extent Plaintiff was obligated to pay Sweeney in connection with a contingent fee; and (4) the status of the annual and sick leave hours at issue in the counterclaim—Plaintiff asserts that she requested that these hours be rescinded and Defendant has now done the paperwork as to same.  These disputed facts affect whether Defendant incurred an expense on the fees and costs that is attributable to Plaintiff individually, whether Plaintiff received a benefit by Defendant's payment of fees or change in her leave time, and whether Plaintiff was unjustly enriched at Defendant's expense.  Accordingly, the motions for summary judgment on the unjust enrichment counterclaim are denied.

III.   CONCLUSION

Based on the foregoing, it is

ORDERED that Defendant's Motion for Summary Judgment filed February 14, 2007 (docket # 28) is **GRANTED IN PART AND DENIED IN PART**.  Specifically, the motion is granted in part on the hostile work environment claim only as to sexual harassment that occurred between January 1998 and July 1998.  It is **DENIED** as to the remainder of the hostile work environment claim and as to the retaliation claim.  It is

FURTHER ORDERED that Plaintiff's Motion for Summary Judgment on Defendant's Counterclaim filed February 27, 2007 (docket # 29) is **DENIED.**  It is

FURTHER ORDERED that Defendant's Cross-Motion for Summary Judgment

(on the Unjust Enrichment Counterclaim) filed March 9, 2006 (docket # 33) is **DENIED.**

Dated:  September 21, 2007

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge